*In re* BAXTER and another, Bankrupts.

*(District Court, S. D. New York. November 30, 1885.)*

1. BANKRUPTCY—PROOF OF DEBT—PREFERENCE—REV. ST. § 5084—RETURN OF PAYMENTS.

  A return of part payments as a condition of proof of debt is not required by section 5084, except upon the concurrence of an intent in the bankrupt, when the payment was made, to create a preference, together with knowledge of his unlawful intent by the creditor.

2. SAME—STATEMENT OF THE CASE.

  Where B. & Co., of New York, being indebted to D., C. & Co., of London, remitted to the latter by mail on July 29th, in the usual course of business, and with no intent to create a preference, a bill of exchange for £1,000, payable to D., C. & Co., drawn upon J. Bros., of London, factors, on account of produce consigned to the latter by B. & Co., and the bill was received by D., C. & Co. on August 9th, and sent the same day to J. Bros. for acceptance, who delivered it to D., C. & Co. on the 10th; B. & Co. failed on Saturday, August 7th, and made an assignment for the benefit of their creditors; but J. Bros. had no knowledge of the failure at the time the acceptance was delivered by them to D., C. & Co.; but D., C. & Co. were informed thereof by telegram the evening previous: *held*, that the bill being accepted in good faith by J. Bros., in the usual course of business, was binding upon them from the time of its delivery to D., C. & Co., and operated as an equitable charge or lien upon the produce in J. Bros.' hands, notwithstanding the prior voluntary assignment of B. & Co.; that the draft having been mailed 12 days before by the bankrupts, also in the usual course of business, and with no intent to prefer, was not an act in violation of any provision of the bankrupt law, and that the case was not,

therefore, within the provisions of section 5084; and that the proceeds of the acceptance need not be repaid to the bankrupts' estate, as a condition of D., C. & Co.'s proving the residue of their demand.

## Motion to Compel Payment of Dividend.

*William Forse Scott*, for the motion.

*Abbott Bros.*, opposed.

BROWN, J. The trustee in bankruptcy in this case having declared two dividends to the amount of 8 per cent., an application has been made to the court to direct the payment of dividends upon two claims, filed on October 8, 1884, by Dennistoun, Cross & Co., London: one for $24,225, the other for $43,428.36, together amounting to $67,653.36. The amount of the debt is not disputed; but the right to dividends is contested on behalf of the trustee upon the ground that Dennistoun, Cross & Co. had accepted payment from the bankrupts of £1,000 as a preference, contrary to the provisions of the bankruptcy act, and that they are thereby precluded, under section 5021, from proving more than a moiety of the debt on account of which the preference was received; or else, by section 5084, prevented from proving their claims at all, except upon a previous surrender to the trustee of the £1,000 received.

The construction that has been placed upon the above sections in order to harmonize them has been that the first is to be applied to cases in which the creditor has resisted repayment until judgment against him in a suit brought by the assignee; while section 5084 admits a *locus penitentiæ*, so that the creditor at any time before such judgment, by surrendering the amount received in payment, may prove his whole debt. *In re Davidson*, 4 Ben. 10; *In re Montgomery*, 3 Ben. 565. The receipt of the £1,000 by Dennistoun, Cross & Co. is not disputed. No suit for the recovery of the amount has been instituted in behalf of the bankrupts' estate, so that section 5084 is alone applicable on this motion.

The principal facts are as follows: Archibald Baxter & Co., of New York, in and prior to July, 1875, were largely indebted to Dennistoun, Cross & Co., upon drafts drawn upon them in their previous dealings. They were accustomed to remit to Dennistoun, Cross & Co., on account, their bills of exchange drawn on one Kough, of London, a commission merchant there, trading under the name of Jones Bros., to whom Baxter & Co. were in the habit of consigning produce for sale, against which these drafts were drawn. On the twenty-ninth of July, 1875, Baxter & Co., of New York, mailed to Dennistoun, Cross & Co. a draft payable to them, drawn upon Jones Bros., for £1,000, against consignments of cheese to Jones Bros. at about the same time. This draft was received by Dennistoun, Cross & Co. on Monday, August 9th, and was sent on the same day to Jones Bros., in London, for acceptance. Upon Saturday, the 7th, Baxter & Co. failed, and made an assignment to a voluntary assignee for the benefit of their creditors. In November following, Baxter & Co. were thrown into

bankruptcy, and their affairs are being wound up by a trustee appointed in pursuance of the bankrupt act. When the draft was received by Dennistoun, Cross & Co. and sent to Jones Bros. for acceptance, they had not heard of the failure or assignment of Baxter & Co., but one of the firm was informed by telegram of that fact at about 8 o'clock in the evening of Monday, the 9th. The next morning Dennistoun, Cross & Co. "sent round to Jones Bros. for the draft," and received it back accepted, Jones Bros. not then being informed of Baxter & Co.'s failure. During that day, or the day following, having learned of the failure, Jones Bros. refused to accept two other similar drafts in favor of Dennistoun, Cross & Co., subsequently received by them in the same way, and presented for acceptance. Upon these facts, about which there is no essential difference, the question is whether the receipt of this acceptance from Jones Bros. constituted a preference in violation of section 5084, so as to preclude Dennistoun, Cross & Co. from proving their debt, except upon surrender of the £1,000.

Section 5084 declares that "any person who, since the second day of March, 1867, has accepted any preference, having reasonable cause to believe that the same was *made or given by the debtor contrary to any provision* of the bankruptcy act, shall not prove the debt, etc., until he shall first surrender to the assignee all property, money, benefit, or advantage received by him under such preference." Two things here are required to exclude the proof: *First,* that the preference was made or given by the debtor "contrary to some provision of the bankrupt act;" *second,* that the creditor "had reasonable cause to believe" that such was the fact. To fall under the prohibition of the bankrupt act it is not enough that the payment be merely against the general policy of the law to secure an equal division of the property of the insolvent debtor. To prevent proof of the debt the payment must have been intended as a preference, and be "contrary to some *provision* of the bankrupt act." On examination of the various provisions of the bankrupt act relating to payments by the debtor, namely, sections 5021, 5113, 5128, and 5132, it is apparent in every case that it is not simply payment that is prohibited, but payment "with intent to give a preference;" or a payment "in contemplation of bankruptcy or insolvency," with such an intent; or a "fraudulent payment;" or a payment or transfer "with intent to prevent the property from coming into the hands of the assignee." Whenever bankers become insolvent, or bankrupt, there is a dividing moment before which all payments that are made in the usual course of business and in good faith are valid, while subsequent payments are liable to be treated as unlawful preferences. So long as they are acting in good faith, and in the usual course of business, their payments cannot be avoided, though the creditor may have thought, or even have known, that the bankers were in fact insolvent, and drew out his deposit for that very reason. A creditor is entitled to the benefits of his superior diligence if no

law be violated. He may be the first to learn of a fact which makes his bankers insolvent, and lawfully avail himself of that knowledge to obtain full payment from his debtor who as yet has not learned the fact, and pays in the usual course of business.

The peculiarity of this case is that no such intent is alleged, or sought to be established, against Baxter & Co. at the time when the draft of £1,000 was mailed to Dennistoun, Cross & Co. on the twenty-ninth of July. There is no proof even that they were insolvent at that time. It is in fact admitted that the draft was sent in the usual course of business, not in contemplation of bankruptcy, and without any intent to create a preference. On the other hand, when the draft, after being accepted, was obtained from Jones Bros. by Dennistoun, Cross & Co., on the morning of August 10th, the latter had full notice of the insolvency, and of the assignment of Baxter & Co. From the time of the acceptance of the draft by Jones Bros., it became a binding obligation upon them, and a lien in their favor was created upon the produce in their hands for the amount of the acceptance. The acceptance, in my judgment, became operative as a payment from the time of its acceptance by Jones Bros., and from that time only. At that time an equitable transfer was effected of so much of the produce in Jones Bros.' hands by way of equitable charge or lien, good in England against the prior voluntary assignment by Baxter & Co., of which Jones Bros. at that time had no knowledge. The draft was paid when due on the eleventh of October. But the only intent in the matter on the part of the bankrupts was their intent when they mailed it, on July 29th; and that act was done in the usual course of business, and with no intent to create a preference, and with no knowledge or contemplation of insolvency. As between them and Dennistoun, Cross & Co., the draft on Jones Bros. was an absolute order to pay Dennistoun, Cross & Co.; this order, as an act intending payment, was complete on the part of Baxter & Co. when the draft was mailed, and was a perfectly legal and valid act. Dennistoun, Cross & Co. had the right to avail themselves of their diligence and superior knowledge in obtaining the draft to be accepted by Jones Bros. in the usual course of business, provided they violated no law and practiced no fraud. They did neither, but were simply diligent in using their own information.

I do not perceive how any new or illegal or fraudulent intent can be connected with the draft on the part of the bankrupts, as of the of the date when Jones Bros. accepted it. If the draft were regarded as a continuing order on the part of Baxter & Co. from the time it was made until the time it was accepted by Jones Bros., nevertheless, no different intent can be associated with the draft at the moment of its acceptance than the intent with which it was drawn and mailed; and the latter, as we have seen, involved no violation of the bankrupt law. In this aspect, the case of *Clark* v. *Iselin*, 21 Wall. 360, 375, seems to be pertinent. In that case it was held that a

warrant of attorney to confess judgment, valid when made, and not fraudulent, and not given in contemplation of insolvency, could not be set aside because judgment was afterwards entered up on it within four months of the bankruptcy, when there was reasonable cause to believe the debtor insolvent. In the case of *Balfour* v. *Wheeler*, 15 Fed. Rep. 229, and 18 Fed. Rep. 893, where such a warrant of attorney was given with intent to create a preference, and with knowledge of existing insolvency, it was held that the judgment and sale under it should be set aside; it being shown that the debtor had also participated in the final proceedings for the entering of judgment and sale of the property. In other words, in order to constitute an illegal preference, or illegal receipt of money by the creditor, there must be some illegal act, or some illegal intent, on the part of the bankrupt in concurrence with knowledge in the creditor, or reasonable cause of belief that the bankrupt has committed an unlawful act in the payment so made.

No such illegal act on the part of the bankrupts exists in this case; nor is there any circumstance, however slight, that indicates their want of good faith in respect to the bankrupt law in mailing this draft and causing this payment. Jones Bros. cannot be regarded as agents of the bankrupts in any such sense as to make their acceptance a new and illegal act on the part of the bankrupts at the time when the draft was accepted; for Jones Bros. acted in entire good faith, and in the usual course of business, and had no knowledge of Baxter & Co.'s failure or insolvency. There was no illegal intent on their part. Their refusal to accept similar drafts soon afterwards is conclusive evidence on this point; nor is there any intimation that there was any culpable negligence in Baxter & Co. in communicating to Jones Bros. the fact of their failure, such as could warrant any inference of an intent by Baxter & Co. to suffer the draft of £1,000 to be accepted for the purpose of giving a preference.

If, instead of a draft on Jones Bros., it had been bank-bills, coupon bonds, or any other form of security not needing further indorsement, that had been forwarded by mail to Dennistoun, Cross & Co. on the twenty-ninth of July, there would have been no ground to contend that the money or securities thus received by Dennistoun, Cross & Co. must be returned, under section 5084, even though they had not been received until the morning of Tuesday, the 10th, at the moment when the acceptance was, in fact, received, and when they had full knowledge of Baxter & Co.'s failure. So far as affects the bankrupt's estate, the result of the two cases would be precisely the same, and the intent of Baxter & Co. would be the same in both, and equally legal. The case, therefore, seems to me not within the provisions of section 5084.

As I have already said, the draft operated as a payment from the time of its acceptance by Jones Bros., so far as relates to the bankrupt's estate; because from that moment it virtually transferred to

Jones' Bros. an interest in the produce, and a lien upon it, to an amount sufficient to protect them in the payment of the draft. From the time of their acceptance, moreover, as they were bound by it, it was beyond the control of either Jones Bros. or the bankrupts.

By section 5130 it would seem that such a virtual transfer of the bankrupts' estate could only be avoided if made within two months prior to the commencement of the proceedings in bankruptcy, which, in this case, was on the fifth of November, or nearly three months after the delivery of the acceptance to Dennistoun, Cross & Co. I do not regard this point, however, as material, because section 5084 becomes operative if the preference was given by the debtor contrary to ANY provision of the bankrupt act. And section 5021 would seem to be operative for six months prior to the filing of the involuntary petition; but as this provision cannot apply here, except upon the debtor's intent to create a preference in contemplation of bankruptcy or insolvency, and as no such intent can be predicated of the bankrupts in reference to this draft, I must hold the payment of £1,000 to be one that was not prohibited by law; and I therefore allow the proofs to stand as made, and hold the petitioners entitled to the dividends.